UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WENDY L. MEADE,

      Plaintiff,

v.                                           Case No: 8:17-cv-2461-T-36AEP

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## **O R D E R**

This matter comes before the Court on Plaintiff Wendy L. Meade's Complaint for review of the final decision of the Commissioner of Social Security ("Commissioner") denying her claim for benefits. Doc. 1. Magistrate Judge Anthony Porcelli submitted a Report and Recommendation ("R&R") recommending that the decision of the Commissioner be affirmed. Doc. 27. Plaintiff filed Objections to the Report and Recommendation (Doc. 28), objecting to the Magistrate Judge's assessment of (1) the Administrative Law Judge's ("ALJ") bias and the matters of recusal and Plaintiff's right to a fair hearing; (2) the ALJ's requirement of workplace statements; (3) medical opinions; and (4) the residual functional capacity ("RFC") determination. Doc. 28 at 2. The Commissioner responded to Plaintiff's objections and argues that the Court should adopt the R&R. Doc. 29. After an independent *de novo* review of the record, including all of Plaintiff's objections to the R&R, the Report and Recommendation will be adopted, confirmed, and approved in all respects, and the decision of the Commissioner will be affirmed.

## I.      BACKGROUND[1]

---

[1] The procedural and factual background are adopted from the Magistrate Judge's R&R.

## A.    Procedural Background

Plaintiff filed an application for disability insurance ("DIB") on April 26, 2006, alleging a disability onset date of January 21, 2006.  R:112-16.  The Commissioner denied Plaintiff's application, both initially and upon reconsideration.  *Id.* at 60-61, 74-79, 84-86.  Plaintiff requested a hearing before an ALJ, and a hearing was held before ALJ Dawn Lieb during which Plaintiff testified.  *Id.* at 21-59, 90.  ALJ Leib found that Plaintiff was not disabled and denied Plaintiff's application for DIB.  *Id.* at 8-20.  Plaintiff requested review from the Appeals Council, which was denied.  *Id.* at 1-7.

Plaintiff appealed to the district court.  *Meade v. Comm'r of Soc. Sec.*, No. 8:09-cv-2027-T-27AEP (M.D. Fla. filed Oct. 6, 2009) (*Meade 1*).  Because the ALJ did not properly consider all medical evidence of record, the district court vacated the Commissioner's decision and remanded the matter for further administrative action.  R:515.  The Appeals Council ordered the ALJ to offer Plaintiff the opportunity for a hearing and take any further action needed to complete the administrative record and issue a new decision.  *Id.* at 519.

ALJ Phylis Pierce conducted a second administrative hearing.  *Id.* at 414-40.  Pierce also found that Plaintiff was not disabled and denied her application for DIB.  *Id.* at 397-407.  The Appeals Council did not assume jurisdiction of the case and the ALJ's decision became the final decision of the Commissioner.  Plaintiff against sought review in this Court.  *Meade v. Comm'r of Soc. Sec.*, No. 8:12-cv-287-T-17MAP (M.D. Fla. filed Feb. 9, 2012) (*Meade II*).  Because the ALJ did not address several inconsistencies in the medical record, the Court again remanded the case for further administrative proceedings.  R:961-63.

On remand, the Appeals Council vacated the Commissioner's decision and remanded the case to an ALJ for further proceedings.  *Id.* at 980.  The Appeals Council ordered the ALJ to offer

the claimant the opportunity for a hearing and to take any further action needed to complete the administrative record and issue a new decision. *Id.*

The case was assigned to ALJ Arline Colon who, despite the directive of the Appeals Council, rendered an unfavorable decision without providing Plaintiff with an opportunity for another administrative hearing, or to otherwise present additional evidence and argument. *Id.* at 849-69. Plaintiff responded in a number of ways, which included filing exceptions with the Appeals Council, sending letters to her representative members of Congress, and submitting letters to the Social Security Administration's ("SSA") Division of Quality Service ("DQS") seeking to file a formal complaint against ALJ Colon. *Id.* at 749-78, 779-81, 782-819. Plaintiff contended that ALJ Colon failed to provide her with a fair opportunity to be heard and engaged in biased conduct. *Id.* at 782-819.

The Appeals Council declined Plaintiff's request for review and Plaintiff sought review in this Court. *Id.* at 713-17; *Meade v. Comm'r of Soc. Sec.*, No. 8:14-cv-2927-T-DNF (M.D. Fla. filed Nov. 21, 2014) (*Meade III*). The matter was reversed and remanded again, this time because Plaintiff was not given the opportunity for a hearing contrary to the order of the Appeals Council. R:1333-34. On remand, the Appeals Council vacated the Commissioner's decision, remanded the case to an ALJ, and directed the ALJ to offer Plaintiff the opportunity for a hearing and to take any further action needed to complete the administrative record. *Id.* at 1337.

Shortly after the remand, DQS responded to Plaintiff's complaint regarding ALJ Colon. *Id.* at 1721. DQS stated that it looked into Plaintiff's allegations regarding ALJ Colon and finished its investigation, but could not reveal further information due to privacy concerns. *Id.* DQS indicated that all appropriate action had been taken regarding Plaintiff's Complaint. *Id.*

On remand, the matter was reassigned to ALJ Colon and Plaintiff filed a motion seeking to recuse ALJ Colon on the basis that ALJ Colon was prejudiced and partial with respect to Plaintiff's claim. *Id.* at 1693-1724. ALJ Colon found that no basis warranted recusal and declined to recuse herself. *Id.* at 1546. Accordingly, ALJ Colon conducted an administrative hearing, following which she found that Plaintiff was not disabled and denied her application for DIB. *Id.* at 1061-1100, 1251-90. Plaintiff did not file exceptions and the Appeals Council did not assume jurisdiction of the case. Plaintiff filed a Complaint with this Court (Doc. 1).

The Magistrate Judge reviewed memoranda regarding the Commissioner's decision, which, at the direction of the Magistrate Judge, additionally addressed the Court's jurisdiction to hear the recusal and bias issues, as well as the standard of review for such issues.[2] Docs. 20, 25-26.

### B.    Factual Background and ALJ's Decision

Plaintiff completed a high school education in 1991. R:131. Her past relevant work includes work as a cashier, receptionist, office helper, and bank teller. *Id.* at 126. Plaintiff alleged that she became disabled on January 21, 2006, and claimed disability due to panic attacks, panic disorder, right knee problems, and carpal tunnel of both hands. *Id.* at 125.

During the hearing before ALJ Colon, a vocational expert ("VE"), Plaintiff, and Thomas L. Harse, Jr., a friend of Plaintiff's for over thirty years, testified. Plaintiff explained that she was

---

[2] The Court reviewed the parties' responses regarding the district court's jurisdiction to consider arguments regarding whether the ALJ was biased and whether recusal was required and finds that it does have jurisdiction. *Cf. Rosen v. Comm'r of Soc. Sec.*, No. 2:14-cv-139-FtM-29DNF, 2014 WL 12629962, at *1 (M.D. Fla. Mar. 11, 2014) (dismissing a complaint seeking to preclude an ALJ from hearing the plaintiff's case for lack of subject matter jurisdiction because the administrative proceedings provided due process and a district court's review of a final decision of the Commissioner may include the failure to recuse an ALJ); 42 U.S.C. § 405(g) (granting district court's jurisdiction over final decisions of the Commissioner).

diagnosed with a panic order and agoraphobia in 1990 and eventually began to take medication that was prescribed to her so that she could leave the house. *Id.* at 1262. However, the medications stopped being effective. *Id.* at 1263-64. Plaintiff also explained that she experienced back pain, for which she has not been treated. *Id.* at 1273. Additionally, Plaintiff stated that she suffered from knee pain since she was a child, and tore her left shoulder rotator cuff, which caused pain for years, but for which she visited the emergency room in 2014. *Id.* at 1273-74.

Harse observed the effects of her agoraphobia, such as not being able to leave the house, or being unable to remain out of the house after leaving because of a total breakdown. *Id.* at 1280. He indicated that she could not be around people or do simple tasks like go to the grocery store as much as 75% of the time. *Id.* at 1281. After she stopped working in 2006, her panic attacks became worse. *Id.* at 1282. For the following years, Plaintiff stopped taking care of herself. *Id.* at 1283. Occasionally, he said, her medications would help. *Id.*

The ALJ asked the VE to consider a hypothetical individual who could perform light work; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, kneel, crouch, or crawl; occasionally be exposed to hazards such as moving mechanical parts of equipment, tools, or machinery; could understand, carry out, and remember simple instructions in two-hour increments, sufficiently enough to complete an eight-hour workday in an environment that did not involve fixed production quotas; and could only withstand occasional changes in the work setting and occasional interaction with coworkers, supervisors, and the general public. *Id.* at 1285. The VE testified that such a person could not perform Plaintiff's past relevant work. *Id.* at 1285-86. However, the VE testified that such a person could perform the duties of a folder, such as in a laundry department, a mail clerk in the private industry, and a marker pricer. *Id.* at 1286. The VE testified that averaging more than half of a day of absences would be problematic, and

approximately six days per year of excused absences would be expected. *Id.* at 1287. A maximum of 15% of time off-task would be generally acceptable. *Id.*

On June 22, 2017, the ALJ found that Plaintiff was not disabled and issued an unfavorable decision. *Id.* at 1064-1090. The ALJ found that Plaintiff last met the insured status requirements on December 31, 2006, and had not engaged in substantial gainful activity during the period from her alleged onset date through her date last insured. *Id.* at 1069. After reviewing the medical file, the ALJ found that Plaintiff had the following severe impairments prior to December 31, 2006: history of Osgood-Schlatter's disease of the right knee, with an accompanying history of patella alta of the right knee, chrondromalacia patella, and patellofemeral pain syndrome; depression/adjustment/dysthemic disorder; anxiety/panic disorder, with anxiety/panic attacks and agoraphobia; dependent personality and cluster B personality traits; and a history of alcohol and benzodiazepine abuse/dependence. *Id.* at 1080. Nonetheless, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* at 1069-71.

The ALJ further found that Plaintiff had the RFC capacity to perform light work, except that she could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps and stairs; could only occasionally balance, stoop, kneel, crouch, and crawl; could tolerate occasional exposure to hazards, such as moving mechanical parts of equipment, tools, or machinery; was limited to understanding, carrying out, and remembering simple instructions in two-hour increments sufficiently enough to complete an eight-hour workday, in an environment with no fixed production quotas, only occasional changes in the work setting, and only occasional interaction with coworkers, supervisors, and the general public. *Id.* at 1071-87. In determining Plaintiff's RFC, the ALJ considered all of the evidence, including Plaintiff's testimony at each

hearing, and concluded that her medically determinable impairments could reasonably be expected to produce the symptoms she alleged. *Id.* at 1073. However, the ALJ concluded that her statements regarding the intensity, persistence, and limiting effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record. *Id.*

The ALJ found that Plaintiff could not perform any past relevant work. *Id.* at 1087-88. After considering Plaintiff's RFC, age, education, work experience, and the testimony of the VE, the ALJ determined that Plaintiff was not disabled. *Id.* at 1089-90.

## II.    LEGAL STANDARD

### A.    Review of a Report and Recommendation

Federal Rule of Civil Procedure 72(b)(2), in pertinent part, provides that "a party may serve and file specific written objections to the proposed findings and recommendations" of a magistrate judge. The district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *Jeffrey S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990). The district judge may accept, reject, or modify, in whole or in part, the Report and Recommendation. Fed. R. Civ. P. 72(b)(3). The district judge may also receive further evidence or recommit the matter to the magistrate judge with further instructions. *Id.*

### B.    Review of the Commissioner's Decision

The Court reviews the Commissioner's decision to determine if it is supported by substantial evidence and is based upon proper legal standards. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). Where the Commissioner's decision is supported by

substantial evidence, the Court must affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. 42 U.S.C. § 405(g); *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) ("If the Commissioner's decision is supported by substantial evidence, we must affirm, even if the proof preponderates against it."). The reviewing court "may not decide the facts anew, reweigh the evidence, or substitute [its own] judgment for that of the [Commissioner]." *Id.*

### C.     An ALJ's Five-Step Disability Analysis

The Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. § 416.920(a)(4). The Eleventh Circuit has explained this process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The plaintiff has the burden of proof on the first four steps; the Commissioner carries the burden on the fifth step. *Wright v. Comm'r of Soc. Sec.*, 327 F. App'x. 135, 136-37 (11th Cir. 2009). If it is determined at any step in the analysis that the claimant is disabled or not disabled, the evaluation does not proceed. *See* 20 C.F.R. § 416.920(a)(4).

## III.     DISCUSSION

### A.     Bias and Recusal

As recognized by the Magistrate Judge, an ALJ must be impartial to ensure the integrity of the disability review process. *Miles v. Chater*, 84 F.3d 1397, 1401; *see also Schweiker v. McClure*, 456 U.S. 188, 195 (1982); Doc. 27 at 9. A presumption of impartiality exists, which can be "rebutted by a showing of conflict of interest or some other specific reason for disqualification." *McClure*, 456 U.S. at 195. "[T]he burden of establishing a disqualifying interest rests on the party making the assertion." *Id.* at 196. To do so, the party must show, based on a realistic appraisal of psychological tendencies and human weakness, there is "a risk of actual bias or prejudgment . . . ." *Withrow v. Larkin*, 421 U.S. 35, 37 (1975).

20 C.F.R. § 404.940 states that:

> An administrative law judge shall not conduct a hearing if he or she is prejudiced or partial with respect to any party or has any interest in the matter pending for decision. If you object to the administrative law judge who will conduct the hearing, you must notify the administrative law judge at your earliest opportunity. The administrative law judge shall consider your objections and shall decide whether to proceed with the hearing or withdraw. If he or she withdraws, the Associate Commissioner for Hearings and Appeals, or his or her delegate, will appoint another administrative law judge to conduct the hearing. If the administrative law judge does not withdraw, you may, after the hearing, present your objections to the Appeals Council as reasons why the hearing decision should be revised or a new hearing held before another administrative law judge.

Similarly, the SSA's Hearings, Appeals, and Litigation Law Manual ("HALLEX") examines this section and advises ALJs that an ALJ "must disqualify or recuse himself or herself from adjudicating a case if the ALJ is prejudiced or partial with respect to any party or has any interest in the matter pending for decision," but that "disqualification is not a matter of personal preference or reluctance to handle a particular case." Office of Hearings and Appeals, *Disqualification of an Administrative Law Judge Assigned to a Case*, HALLEX I-2-1-60(A), 1993 WL 642979 (July 27, 2016). Should a claimant object to the ALJ assigned to the case, and the ALJ decides disqualification is not warranted, the ALJ must set forth the reasons in writing. *Id.* at I-2-1-60(c).

In response to Plaintiff's motion seeking ALJ Colon's recusal, ALJ Colon recognized the requirements of 20 C.F.R § 404.940 and HALLEX Rule I-2-1-60(A). R:1546. ALJ Colon further stated that she would not recuse herself because she was not prejudiced or partial, did not have any interest in the matter, did not share an acquaintance with Plaintiff or any other party that would require recusal, had no particular knowledge of Plaintiff or any other party from an extrajudicial source, and did not believe her participation in the case would give an appearance of impropriety. *Id.*

Additionally, in the Decision denying Plaintiff's application for DIB, ALJ Colon recognized the lengthy procedural history of this matter and the fact that the Appeals Council remanded the case to her notwithstanding that it undoubtedly knew of the formal complaint filed by Plaintiff against ALJ Colon. *Id.* at 1064-66. ALJ Colon then detailed the applicable law and engaged in an extensive discussion of the record evidence. *Id.* at 1067-90. The Magistrate Judge rejected Plaintiff's assertion that the decision indicates that ALJ Colon harbored bias or was impartial against Plaintiff. Doc. 27 at 13. Instead, the Magistrate Judge concluded that the extensive decision shows that ALJ Colon went to great lengths to consider all evidence and provide detailed explanations of the evidence. *Id.* at 13, 16. Accordingly, the Magistrate Judge recommends that the Court conclude that Plaintiff failed to demonstrate evidence of actual bias or prejudgment. *Id.* at 14, 16.

## 1.    ALJ Colon's Purported Willingness to Disregard the Law

Plaintiff objects to the R&R on several bases. First, Plaintiff contends that ALJ Colon's prior refusal to provide her with a hearing is strong evidence of ALJ Colon's disregard for the law. Doc. 28 at 2. Plaintiff relies on ALJ Colon's statement in the first decision issued by her that "[t]here seems to be absolutely no basis for the directive of a new hearing, as the Appeals Council

has offered no reasoning as to how a third hearing would not be cumulative." R:852. Plaintiff contends that ALJ Colon knew the Appeals Council had the authority to direct a new hearing and that it had done so, but usurped its power for herself. Doc. 28 at 3.

Plaintiff also attached an exhibit to her Objection that includes (1) an August 31, 2018 charge against ALJ Colon in state court for giving false information to law enforcement, (2) a criminal report affidavit in which a state law enforcement officer attests that ALJ Colon knowingly gave false enforcement to a law enforcement officer by calling 911 and stating that her husband pointed a firearm at her and her son, and by giving further false information after law enforcement arrived; and (3) a plea of no contest to the charge. Doc. 28-1. Regarding the attachment, the Commissioner responds that these are collateral matters unrelated to Plaintiff's disability case that occurred almost four years after ALJ Colon's decision. Doc. 29 at 1-2.

Normally, federal courts will not examine evidence that was not considered during administrative proceedings unless the claimant establishes that: "(1) there is new noncumulative evidence; (2) the evidence is 'material,' that is, relevant and probative so that there is a reasonable possibility that it would change the administrative result, and (3) there is good cause for the failure to submit the evidence at the administrative level." *Mazuji v. Comm'r, Soc. Sec.*, 577 F. App'x 959, 962 (11th Cir. 2014) (quoting *Caulder v. Bowen*, 791 F.2d 872, 876-77 (11th Cir. 1986)). Here, the evidence is noncumulative and was not submitted at the administrative level because it had not yet occurred. Moreover, the evidence is not material.

As indicated by the Commissioner, ALJ Colon's charge and no contest plea have nothing whatsoever to do with Plaintiff's application for benefits or medical records and occurred more than a year after the June 2017 hearing and unfavorable decision. R: 1090, 1253. Plaintiff fails to address how this event that occurred well after Plaintiff's proceedings before ALJ Colon are actual

evidence of bias or prejudgment. Instead, Plaintiff makes general and conclusory statements that it is "confirmation of her mind-set," that she "would and did disregard the law," and that she would "flaunt[] the law in order to do what she wanted to do." Doc. 28 at 3.

Contrary to Plaintiff's speculation, the exhibit is neither relevant nor probative with respect to whether ALJ Colon was biased or had prejudged her case and, therefore, is not material and need not be considered by this Court. Further, even considering this evidence, because of the lack of any relationship with the case, combined with the temporal distance between the decision and the charge against ALJ Colon, the Court concludes that it does not rebut the presumption of impartiality and is not evidence of actual bias or that ALJ Colon prejudged Plaintiff's case.

Likewise, ALJ Colon's failure to provide Plaintiff with a hearing prior to *Meade III* is not evidence of bias or prejudgment. Plaintiff does no more than speculate that ALJ Colon willfully ignored the law. As explained by the Magistrate Judge, such speculation suggests that any time an administrative judge commits a legal error, he or she could never be considered to be unbiased on remand. Doc. 27 at 14. This is not the case, as indicated by the SSA's procedure of reassigning a case only after a second remand. Office of Hearings and Appeals, *Assignment of Service Area Cases to Administrative Law Judges*, HALLEX I-2-1-55(D)(5), 1993 WL 642977 (Aug. 29, 2014). Accordingly, the Court will overrule Plaintiff's objections.

### 2.     ALJ Colon's Purported Attempt to Justify and Avoid the Consequences of her Illegal Actions

In her decision, ALJ Colon addressed her prior decision that was vacated by stating that "with the sole intent and purpose of following the guidance in HALLEX[,] the undersigned did not offer [Plaintiff] a new hearing." R:1065. ALJ Colon also included the portion of her prior decision in which she indicated (by paraphrasing HALLEX) that a claimant need not be offered

the opportunity for a hearing unless the ALJ determines that the case warrants it, which the Court found inapplicable to this case as contrary to the Appeals Council's order in *Meade III*. *Id.*

In her Objection, Plaintiff contends that by doing so, ALJ Colon "pretended" that she did not paraphrase HALLEX in a deliberate attempt to usurp the authority of the Appeals Council. Doc. 28 at 5. In lieu of providing an explanation and analysis as to how this constitutes a game of pretend, Plaintiff baldly states that it would be "incredulous" for anyone to believe that this was not an usurpation of power. *Id.* While Plaintiff may be confounded, it is possible for the law to be misinterpreted or misconstrued. Thus, the legal system includes an appeals process, which in this case led to a remand based on the error. Plaintiff has pointed to no evidence that ALJ Colon intentionally erred, and simply engages in conjecture.

Additionally, Plaintiff again attempts to rely on matters outside the record by citing to a Florida DUI Uniform Traffic Citation received by ALJ Colon on December 2, 2018; a citation on the same date for leaving the scene of a crash with property damage without giving information; a Criminal Report Affidavit in which the officer attested that ALJ Colon, who appeared intoxicated, swerved and struck the side of another person's vehicle and continued to drive without stopping to provide her information; and a judgment in which ALJ Colon pleaded no contest and was adjudicated guilty for driving with an unlawful blood alcohol limit with property damage/injury. Doc. 28-1 at 14-17. As with the prior exhibit, Plaintiff contends that although these documents would not affect her determination in Plaintiff's case, they are evidence of ALJ Colon's "mind-set to minimize her illegal acts and try to avoid consequences of them, a mind-set that was there when she was deciding Plaintiff's disability claim." Doc. 28 at 6.

As with the prior exhibit, this one need not be considered by the Court because it is not material to the case. It is further removed, temporally, from the hearing and decision than the prior

charge and plea of no contest, and is likewise entirely unrelated to Plaintiff's application for benefits or medical evidence. It is not clear how the no contest plea or adjudication of guilt shows a "propensity [by ALJ Colon] to justify her illegal actions," as Plaintiff conclusively states it does. *Id.* Moreover, even were the Court to consider such evidence, it does not rebut the presumption of impartiality and show actual bias or that ALJ Colon predetermined Plaintiff's case.

Instead, as recognized by the Magistrate Judge, ALJ Colon engaged in a detailed analysis of the evidence of record, and nothing in the decision shows that she attempted to justify the consequences of "illegal"[3] actions. Accordingly, Plaintiff's objections will be overruled.

### 3. Denial of Due Process Produced by Unacknowledged Bias

"Ordinarily, a judge's rulings in the case or a related case may not serve as the basis for a recusal motion." *McWhorter v. City of Birmingham*, 906 F.2d 674, 678 (11th Cir. 1990). There is an exception to this rule where a movant shows that a pervasive bias and prejudice exist. *Id.* Courts have previously denied motions for recusal after a litigant has filed a judicial conduct complaint against the presiding judge, finding that the fact of filing such a complaint did not reasonably bring the judge's impartiality into question. *Woodruff v. McLane*, No. 7:04-cv-96 (HL), 2006 WL 3436045, at *1 (M.D. Ga. Nov. 29, 2006); *Nowaczyk v. Warden, N.H. State Prison*, No. Civ. 97-309-JD, 2003 WL 1955171, at *7 (D.N.H. Apr. 24, 2003); *Kampfer v. Gokey*, 955 F. Supp. 167, 170 (N.D.N.Y. 1997); *In re Hunter*, 167 Vt. 219 (1997).

In her Objection, Plaintiff contends that her DQS complaint regarding ALJ Colon, together with Plaintiff's affidavit regarding her concerns with respect to Judge Colon were such that they caused a bias or prejudice so extreme as to display clear inability to render fair judgment, creating

---

[3] Plaintiff fails to explain how committing error in a legal proceeding is illegal and the Court does not suggest that it is, but merely addresses the terms used in Plaintiff's Objection.

a denial of due process in the absence of recusal. Doc. 28 at 8. Plaintiff recognizes that "[n]ot every complaint about a judge should lead to a finding of bias and denial of due process if recusal is not granted," but nonetheless contends that because "ALJ Colon clearly violated a basic principle of American jurisprudence by thumbing her nose at the appellate authority over her," recusal was required to ensure due process. *Id.*

Nonetheless, Plaintiff points to nothing other than legal error prior to remand and her contention that a "clear likelihood" exists that ALJ Colon knew she was committing legal error. Doc. 28 at 8. This speculation is not sufficient to rebut the presumption of impartiality, or show bias or impartiality. Accordingly, Plaintiff's objections will be overruled.

### 4.     Evaluation Independent from Appeals Council

The Magistrate Judge recognized in the R&R that ALJ Colon's decision notes that the Appeals Council did not order reassignment to another ALJ on remand, despite undoubtedly being aware of the case's history and the formal complaint filed against ALJ Colon. Doc. 27 at 13. The R&R also suggests that the policy of not remanding to a different ALJ until after a second remand is an indication that ALJ Colon was not biased or partial. *Id.* at 14.

In her Objection, Plaintiff contends that this effectively "relinquishes the authority of review from the Federal Court to the Appeals Council," which "is not the final determiner of whether Plaintiff has received a fair hearing." Doc. 28 at 8. Plaintiff further contends that because the Appeals Council did not assume jurisdiction after ALJ Colon's first review of the case and would have allowed the decision to stand, the issue is compounded. *Id.* at 9.

The Court finds no error in the Magistrate Judge's recognition that the Appeals Council chose not to reassign the case. Nothing in the R&R suggests that the Court should rely on this fact alone, or should blindly follow the procedures of the Appeals Council. Indeed, the R&R

additionally recognizes as reasons for finding that Plaintiff did not show any evidence of bias or partiality the fact that ALJ Colon conducted a thorough analysis of the case and that the analysis is supported by competent, substantial evidence.  The Court agrees with the Magistrate Judge's analysis.  Accordingly, Plaintiffs objections will be overruled.

### 5.      Extraordinary Requirements to Establish Disability

Plaintiff contends that ALJ Colon put extraordinary and extreme requirements on Plaintiff. Doc. 28 at 9.  These purported extreme requirements include:  (1) stating that Plaintiff's panic attacks could not be too severe because she did not experience one in a doctor's office, which is unreasonable because panic attacks cannot be turned off and on; (2) stating that no former employer or fellow employee testified that Plaintiff had panic attacks or anxiety, which is unreasonable because employers will not give out the kind of information ALJ Colon demanded for fear of lawsuits; (3) ALJ Colon gave little weight to global assessment of functioning ("GAF") scores except when useful to giving little weight to a doctor's opinion in an attempt to "have it both ways"; (4) ALJ Colon failed to include certain statements by a doctor in evaluating his opinions; and (5) ALJ Colon incorrectly found Plaintiff's friend's explanation of Plaintiff's panic attacks not to be credible because ALJ Colon stated that the statements did not quantify the length or cause of the panic attacks and provided few details, even though the friend explained that Plaintiff had more than 50 panic attacks that varied in length and whose cause she could not discern (a statement consistent with what a doctor said was typical of panic attacks), showing that ALJ Colon placed unreasonable requirements on the friend.  *Id.* at 9-12.

This argument amounts to no more than disagreement with the ALJ's findings.  As stated by the Magistrate Judge, "Plaintiff's disagreement with ALJ Colon's findings does not render those findings biased."  Doc. 27 at 14; *cf. United States v. Catalano*, No. 8:04-cr-348-T-24 TGW,

2010 WL 3394714, at *2 (M.D. Fla. Aug. 26, 2010) (stating that a litigant's disagreement with orders is not a sufficient basis to mandate recusal). For example, regarding the GAF scores, ALJ Colon discussed the scores and articulated why they deserved little weight, an assessment supported by the record. R:1072-80, 244-67, 330-38, 371-74, 382-85). Plaintiff cherry picks certain portions of ALJ Colon's decision with which she disagrees and contends that they are incorrect and, therefore, a demonstration that ALJ Colon was biased against her. Nonetheless, such findings that are simply unfavorable are not a demonstration of bias. *Cf. Johnson v. Monaco*, 350 F. App'x 324, 327 (11th Cir. 2009) (stating that "adverse rulings alone, either in the same or a related case, are insufficient to demonstrate a court's impartiality absent a showing of pervasive bias."). Accordingly, Plaintiff's objections will be overruled.

### 6.     The Detail of ALJ Colon's Decision

Finally, Plaintiff objects to the R&R's reliance on ALJ Colon's thoroughness in her decision as evidence that she was not biased, stating that this is no more than confirmation bias. Doc. 28 at 13. Plaintiff points to no legal error or evidence of bias in this argument. As recognized by the Magistrate Judge, the thorough decision is supported by substantial evidence and Plaintiff has not shown any evidence of bias. Doc. 27 at 13-16. Accordingly, Plaintiff's objections will be overruled.

### B.     Requirement of Workplace Statements

In the decision, the ALJ stated that "the record contains no statement from a former employer—or even a former coworker—corroborating the claimant's allegations of difficulties at work due to her panic disorder and anxiety/panic attacks." R:1073-74. In response to Plaintiff's contention that this was an impermissible requirement by the ALJ, and in light of the ALJ's discussion of the medical and other evidence, the Magistrate Judge concluded that the ALJ did no

more than observe the absence of employer or coworker statements that would corroborate Plaintiff's assertion that she experienced difficulty working due to her panic disorder and panic attacks. Doc. 27 at 25.

The Court agrees with the Magistrate Judge's conclusion that, when the statement is read in the context of the ALJ's entire decision, it is no more than one consideration amongst all of the evidence that the ALJ considered. Indeed, after observing the absence of corroborating employer or coworker statements, the ALJ stated that "the claimant's pattern of work and earnings prior to her alleged disability might tend to support her claims of disability by January 21, 2006," but concluded that "the evidence, as a whole, remains equivocal on this point." *Id.* at 1074.

Plaintiff's assertion that by mentioning the lack of such evidence and denying Plaintiff's claim based on a lack of evidence, the ALJ required that evidence, is faulty logic. Doc. 28 at 13. The ALJ did not indicate that such evidence was required, but concluded that after a review of all of the evidence that Plaintiff did not establish that she was disabled. R:1074-87. Indeed, the ALJ notes other evidence absent from the record that supports her conclusion, such as the lack of records providing historical insight into Plaintiff's mental health leading to the alleged onset date, despite Plaintiff's allegations that her anxiety and panic attacks dated back to the early 1990s. *Id.* at 1074. The ALJ also stated that the record does not contain evidence of any acute physical or mental health issues on or immediately after Plaintiff's alleged disability onset date. *Id.* at 1074-75. Regarding physical impairments, the ALJ observed that the record did not include evidence to support Plaintiff's subjective complaints that she experienced constant and excruciating pain exacerbated by sitting, standing, and/or walking for extended periods. *Id.* at 1082. These statements are contained in a more thorough discussion of Plaintiff's medical records and other evidence.

The decision makes it clear that the ALJ considered all evidence and did not base the decision solely on one piece of evidence, or the lack thereof. *Id.* Accordingly, Plaintiff's objections will be overruled.

## C. Medical Opinions

An ALJ must consider all evidence in a claimant's case record when making a determination or decision as to whether the claimant is disabled. 20 C.F.R. § 1520(a)(3). Regarding medical opinions, considering how much weight to give a medical opinion, the ALJ must consider a number of factors, including:

> (1) whether the doctor has examined the claimant; (2) the length, nature and extent of a treating doctor's relationship with the claimant; (3) the medical evidence and explanation supporting the doctor's opinion; (4) how consistent the doctor's "opinion is with the record as a whole"; and (5) the doctor's specialization.

*Forsyth v. Comm'r of Soc. Sec.*, 503 F. App'x 892, 893 (11th Cir.2013) (citing 20 C.F.R. §§ 404.1527(c), 416.927(c)). In particular, the Commissioner's regulations require that the opinions of examining physicians be given more weight than non-examining physicians, the opinions of treating physicians be given more weight than non-treating physicians, and the opinions of specialists (on issues within their areas of expertise) be given more weight than non-specialists. *See* 20 C.F.R. §§ 404.1527(c)(1)-(2), (5) & 416.927(c)(1)-(2), (5). Additionally, a treating physician's opinion must be given substantial weight unless the commissioner shows good cause for failing to do so. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *Hillsman v. Bowen*, 804 F.2d 1179, 1181 (11th Cir.1986). Good cause exists where the opinion is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

### 1. Karl Jones, M.D.

Jones is a psychiatrist who treated Plaintiff. R:329-38. The ALJ stated that Jones' records provided little insight because they were difficult to decipher, but considered a September 13, 2006 deposition he took. *Id.* at 1075; *see also id.* at 217-18. In the deposition, Jones stated that Plaintiff was diagnosed with chronic major depression, panic anxiety "without agoraphobia," and a dependent personality. *Id.* at 1075; *see also id.* at 217. Jones stated that Plaintiff's progress had not been significant, but that there had been some progress under his care. *Id.* at 1075; *see also id.* at 217-18. He nonetheless also stated that Plaintiff's GAF score decreased over the prior 6 months from 60 to 50. *Id.* at 1075; *see also id.* at 217. The ALJ found this testimony to be inconsistent. *Id.* at 1075. The ALJ also found a treatment record note that Plaintiff had pressured speech and an anxious mood inconsistent with a note from the same date that she was well groomed, exhibited appropriate behavior, aspect, and thought process, and showed average insight and judgment. *Id.* at 1075; *see also id.* at 330. On this visit, approximately one and a half months after the deposition, Jones evaluated Plaintiff's GAT as 75—25 points higher than at the time of the deposition. *Id.* at 1075; *see also id.* at 330. Additionally, Jones opined that Plaintiff experienced limitations in various areas of mental functioning as far back as 1999, while Plaintiff has never contended that her disability date was earlier than 2006. *Id.* at 1086; *see also id.* at 233-34. Based on the inconsistencies, the ALJ gave little weight to Jones' records and opinions. *Id.* at 1075.

Plaintiff objects to the Magistrate Judge's conclusion that the ALJ applied the correct legal standards and her decision to give little weight was supported by substantial evidence. Doc. 28 at 14-15. Plaintiff asserts that the ALJ did not consider the correct factors, including Jones' board certification showing special expertise in his field, the length of Jones' treating relationship with Plaintiff, and his scientific and medical explanation of the episodic nature of panic disorder that explained the variation in Plaintiff's presentation from one medical visit to another. *Id.*

Contrary to Plaintiff's assertion, the record does contain evidence that the ALJ considered the length of Jones' treating relationship with Plaintiff. R:1077, 1079. Moreover, this case is not like *Mace v. Commissioner, Social Security Administration*, 605 F. App'x 837, 842-43 (11th Cir. 2015), which Plaintiff cites to for the proposition that failure to take into account the episodic nature of a condition while evaluating the evidence and a medical opinion requires reversal and remand. In *Mace*, the ALJ gave little weight to a treating physician of a claimant who alleged disability from bipolar and major depression disorders. *Id.* at 841. The ALJ concluded that the physician's opinions were not supported by overall evidence of record and were inconsistent with other evidence, stating that the opinion that sometimes she would be able to perform certain functions and sometimes she would not was inconsistent with the claimant's reports that she finished what she started and other opinion testimony that the claimant could maintain her own home for short periods of time. *Id.* at 842. The Eleventh Circuit explained that the opinions and treatment notes showed that the claimant had good days and bad days, which led to the opinions that the claimant could "at times[] follow instructions, maintain concentration, and stay on task," which were not inconsistent with the treating physician's opinion that the claimant could not always follow instructions, maintain concentration, and stay on task. *Id.* at 844. The ALJ had found such opinions to be inconsistent and gave little weight to the treating physician's opinion. *Id.* The Eleventh Circuit found this to be error and explained that the ALJ failed to recognize the episodic nature of the alleged mental impairments. *Id.*

Here, on the other hand, the ALJ found inconsistencies in Jones' notes even within the same day. For example, Jones indicated that Plaintiff had improved at the same time that he lowered her GAF. R:217. Thus, by giving little weight to his opinion, the ALJ did not fail to recognize the episodic nature of her disorders, but instead noted that Jones' opinions were

internally inconsistent. The ALJ's conclusion is supported by substantial evidence. Accordingly, Plaintiffs objection will be overruled.

### 2. Gerald J. Hodan, Ph.D.

Hodan performed a consultative psychological examination of Plaintiff in 2006, who diagnosed her with panic disorder with agoraphobia, dysthymic disorder, and adjustment disorder, along with a history of alcohol abuse. R:371-74. He concluded that her main problem would be with reliability and that she was able to work through the beginning of 2006 by taking excessive amounts of Xanax, for which she had to go into detox. *Id.* at 373-74. The ALJ gave little weight to Hodan's opinion that Plaintiff might have difficulties with reliability and that her agoraphobia may prevent her from leaving the house. *Id.* at 1084. The ALJ noted that although Plaintiff's work record suggested reliability may have been an issue, the medical evidence did not include reference to occasional or repeated instances of being late, failing to show, or cancellations. *Id.* at 1085. The ALJ also explained that a large part of Hodan's opinions relied on what Plaintiff told him and less on his own observations. *Id.* In terms of collateral evidence, Hodan reviewed only one psychiatric treatment note from an unspecified source. *Id.* at 371. Additionally, the ALJ noted that Plaintiff's medical records showed the same dosages and frequencies for prescriptions since 1993, there was an absence of hospital visits with anxiety or panic attacks, and no evidence showed deterioration of her condition at work in January 2006. *Id.* at 1085.

As the Magistrate Judge concluded, nothing in Hodan's evaluation supported his conclusion that Plaintiff would prove unreliable or be unable to leave the house. Doc. 27 at 24. Nor did other evidence in the record. Instead, the evidence suggested that Plaintiff could reliably attend appointments and had done so with the same medications since 1993. R:131, 267, 602, 612, 1059, 1085, 1725, 1729, 1847. Contrary to Plaintiff's assertion, the ALJ did not require

unreasonable verification of panic attacks by noting that Plaintiff could attend appointments, but reviewed the evidence and found that the record did not contain evidence that Plaintiff was unreliable and unable to leave the house. Substantial evidence exists to support the ALJ's decision to provide little weight to these portions of Hodan's opinions.

### 3. Lia Nardone, M.D.

Nardone is a psychiatrist who began treating Plaintiff in November 2006. R:244-67. Nardone diagnosed Plaintiff with moderate panic disorder with agoraphobia, benzodiazepine dependence, borderline tendencies, and right knee arthritis. *Id.* at 266. The ALJ considered Nardone's treatment of Plaintiff into 2009. *Id.* at 1078. The ALJ summarized Nardone's medical treatment records by stating that there were not "any psychosis once the medication side effects subsided, [her] thought processes were always organized, speech was generally normal (if not infrequently 'rapid' and/or 'pressured'), and there was never an indication of deficits in orientation, attention, memory, or concentration." *Id.*; *see also id.* at 244-67. The ALJ concluded that Nardone's records from 2006 through 2009 did not support Plaintiff's allegations of disabling mental health symptoms. *Id.* at 1079, 1082.

Nardone opined in March 2007 that Plaintiff would be unable to maintain employment due to the severity and recurrence of her panic disorder. *Id.* at 1085. The ALJ gave this conclusion little weight. *Id.* In doing so, the ALJ explained that it was inconsistent with Nardone's notes. *Id.* Specifically, Nardone's records indicated that Plaintiff was less anxious after her divorce was finalized in 2008, and was also motivated to be more productive, socialized more, and was able to push past her anxiety. *Id.* at 248. Shortly thereafter, Plaintiff was working on behavioral techniques to confront her anxiety, which had been manageable. *Id.* at 246. Throughout this time, Nardone noted that Plaintiff exhibited no psychomotor agitation/retardation, her speech was

normal in rate and tone, her affect was euthymic. *Id.* at 244-67. Nonetheless, Nardone's opinion in 2007 did not indicate for how long Plaintiff would be unable to maintain employment, and the ALJ concluded that this was inconsistent with the records of the following year. *Id.* at 1086. Additionally, the conclusion came after the date of last insured, was inconsistent with the rest of the record, and was a legal conclusion that fell within the province of the ALJ. *Id.* at 1085-86. Accordingly, the ALJ gave it little weight. *Id.*

Plaintiff objects to the weight given to Nardone's opinion because it suggests that the panic disorder caused the divorce, and Plaintiff's ex-husband indicated that Plaintiff's panic disorder caused the divorce. Doc. 28 at 17. The decision, however, does not suggest that the divorce was the cause of Plaintiff's panic disorder. Instead, the decision repeatedly recognizes that Plaintiff has complained of panic attacks since the early 1990s. Regarding the discussion of divorce in the context of Nardone's opinion, the ALJ is simply recognizing what is contained in Nardone's treatment notes.

Plaintiff also objects because she contends that the ALJ evaluated Plaintiff's disorder as "moderate" based on Nardone's diagnosis of Plaintiff having "moderate panic disorder."[4] *Id.* As recognized by the Magistrate Judge, the ALJ's discussion of Nardone's opinion does not suggest that the ALJ afforded little weight to the opinion based on Nardone's diagnosis of moderate panic disorder. Doc. 27 at 22. Instead, the ALJ evaluated Nardone's notes and determined that they did not support Nardone's legal conclusion regarding Plaintiff's ability to work. Indeed, the determination of whether Plaintiff is capable of maintaining employment is a decision reserved for the Commissioner and no special significance need be afforded to the source of such an opinion.

---

[4] Additionally, the ALJ found that Plaintiff had the severe impairment of anxiety/panic disorder. R:1069.

20 C.F.R. § 404.1527(d). The decision to give Nardone's opinion little weight is supported by substantial evidence and, accordingly, Plaintiff's objections will be overruled.

### D. RFC

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, an ALJ makes an assessment based on all of the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all of the other evidence of record and will consider all of the medically determinable impairments, including impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2) & (e), 416.920(e), 416.945(a)(2) & (e)(emphasis added); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). Thus, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. Titles II & XVI: Assessing Residual Functional Capacity in Initial Claims, SSR 96–8P (S.S.A. July 2, 1996), 96–8p, 1996

WL 374184, at *5; 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3), 416.929(c)(3)(i)–(vii), 416.945(a)(3).

Plaintiff objects to the R&R on the basis that the Magistrate Judge erred in assessing her RFC argument. Doc. 28 at 17. Plaintiff contends that the ALJ's decision does not account for Plaintiff having had panic attacks, despite acknowledging panic attacks with agoraphobia as a severe impairment. Doc. 28 at 17. Plaintiff states that the essential feature of a panic disorder is the presence of recurrent, unexpected attacks, and the essential feature of agoraphobia is anxiety about being in places or situations from which escape might be difficult or embarrassing, or in which help may not be available. *Id.* at 18. Plaintiff submits that the anxiety caused by agoraphobia leads to a pervasive avoidance of a variety of situations that may include being alone outside the home. *Id.* Plaintiff contends that the RFC anticipates Plaintiff being able to engage in an 8-hour workday, 5 days a week, without having any panic attacks and without suffering from agoraphobia on those days, and fails to provide for her severe impairments. *Id.*

Plaintiff is limited to light work in her RFC. R:1071. Additionally, the ALJ included the limitations that Plaintiff was limited to understanding, carrying out, and remembering simple instructions in two-hour increments. *Id.* She was further limited to an environment without fixed production quotas, only occasional changes in the work setting, and only occasional interactions with coworkers, supervisors, and the general public. *Id.* In making this assessment, the ALJ stated that she "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . ." *Id.* The ALJ also considered opinion evidence. *Id.*

The ALJ considered Plaintiff's testimony with respect to her panic disorder/panic attacks and agoraphobia. *Id.* at 1072-73. After considering this evidence, the ALJ found that Plaintiff's

"medically determinable impairments could reasonably be expected to produce the above-alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . ." *Id.* at 1072. Accordingly, the ALJ found the statements to affect Plaintiff's "ability to work only to the extent they can reasonably be accepted as consistent with the objective medical and other evidence." *Id.* The ALJ then engaged in an extensive 17-page discussion of the evidence supporting her RFC assessment, including her assessment regarding Plaintiff's panic disorder and agoraphobia. *Id.* at 1073-87.

As stated by the Magistrate Judge, the restrictions imposed by the ALJ account for the limitations that are supported by the medical evidence. *Id.* This evidence includes the assessments by mental health professionals in 2006 that did not support a finding of disabling mental limitations already discussed. *Id.* at 1077. Substantial evidence supports the ALJ's decision. Accordingly, Plaintiff's objections will be overruled.

## IV.    CONCLUSION

After careful consideration of the Report and Recommendation of the Magistrate Judge, in conjunction with an independent examination of the file, the Magistrate Judge's Report and Recommendation should be adopted, confirmed, and approved in all respects.

Accordingly, it is **ORDERED AND ADJUDGED**:

1.    Plaintiff's Objections to Report and Recommendation (Doc. 28) are **OVERRULED**.

2.    The Report and Recommendation of the Magistrate Judge (Doc. 27) is **adopted, confirmed, and approved** in all respects and is made a part of this Order for all purposes, including appellate review.

3.     The decision of the Commissioner of Social Security is **AFFIRMED**.

4.     The Clerk is directed to terminate all pending motions and deadlines, enter

judgment accordingly, and **CLOSE** this case.

**DONE AND ORDERED** in Tampa, Florida on March 19, 2019.

Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any